UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMIEN T. WHITE,

        Petitioner,

                                      CASE NO. 04-CV-75071-DT

    v.                              JUDGE GEORGE CARAM STEEH

                                        MAGISTRATE JUDGE PAUL J. KOMIVES

JOHN CASON,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 4
         1.   *Suppression Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         2.   *Trial Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.    *Fourth Amendment Claims (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Ineffective Assistance of Counsel Claims (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . 12
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
         2.   *Analysis–Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            a. Failure to Seek Suppression Based on Fourth Amendment Violations . . . . . . . . . . 13
            b. Failing to Strike Juror . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            c. Conceding Guilt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            d. Failure to Share Discovery Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            e. Failing to Prepare for Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         3.   *Analysis–Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     F.    *Involuntary Confession Claim (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     G.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
     H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Damien T. White is a state prisoner, currently confined at the Muskegon Correctional Facility in Muskegon, Michigan.

        2.      On April 3, 1997, petitioner was convicted of one count of first degree felony murder, MICH. COMP. LAWS § 750.316; and one count of possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On June 20, 1997, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      THE TRIAL COURT JUDGE CREATED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENT PURSUANT TO THE WALKER HEARING.

        II.     DEFENDANT-APPELLANT'S COUNSEL, ROBERT PLUMPE, VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO COUNSEL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. White*, No. 207963, 1999 WL 33435702 (Mich. Ct. App. Sept. 17, 1999) (per curiam).

        4.      Petitioner, through counsel, sought leave to appeal these issues to the Michigan Supreme Court. Petitioner also raised in that court an additional issue:

2

WHERE MR. WHITE'S CONFESSIONS WERE THE FRUIT OF A
WARRANTLESS ARREST WHICH WAS NOT SUPPORTED BY PROBABLE
CAUSE, THE CONFESSIONS SHOULD HAVE BEEN SUPPRESSED.
BECAUSE TRIAL COUNSEL FAILED TO SEEK SUPPRESSION OF THE
CONFESSIONS ON THIS BASIS, AND APPELLATE COUNSEL FAILED TO
RAISE THIS ISSUE IN THE COURT OF APPEALS, MR. WHITE WAS
DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See*

*People v. White*, 462 Mich. 867, 616 N.W.2d 689 (2000).

     5.    Thereafter petitioner filed a motion for relief from judgment in the trial court pursuant

to MICH. CT. R. 6.500-.508, raising the following claims:

    I.    DEFENDANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS
AND TO EQUAL PROTECTION OF THE LAW UNDER MICHIGAN
CONST 1963, ART 1, § 11, § 17, § 20; UNITED STATES
CONSTITUTIONAL AMENDMENTS IV, V, XIV, WHERE HIS
WARRANTLESS ARREST WAS UNSUPPORTED BY PROBABLE
CAUSE, WHERE THE PRE-ARRAIGNMENT DELAY BY THE POLICE
WAS USED AS A TACTIC TO EXTRACT EVIDENCE FROM
DEFENDANT; WHERE HIS CONFESSION WAS THE FRUIT OF THE
WARRANTLESS ARREST AND PRE-ARRAIGNMENT [DELAY] AS
FRUIT OF THE POISONOUS TREE.

    II.    DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS
AND TO EQUAL PROTECTION OF THE LAW UNDER MICHIGAN
CONST. 1963, ART 1, § 17, § 20; UNITED STATES CONSTITUTIONAL
AMENDMENTS VI, XIV; WHERE HE WAS DEPRIVED OF THE
EFFECTIVE ASSISTANCE OF COUNSEL DURING HIS WALKER
HEARING, WHERE COUNSEL FAILED TO CHALLENGE THE
UNLAWFUL ARREST; THE PRE-ARRAIGNMENT DELAY AND TO
MOVE FOR THE SUPPRESSION OF THE STATEMENT UNDER THE
POISONOUS TREE DOCTRINE.

    III.    DEFENDANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS
AND TO EQUAL PROTECTION OF THE LAW UNDER MICHIGAN
CONST. 1963 ART 1, § 17, § 20; UNITED STATES CONST.
AMENDMENTS VI, XIV; WHERE HE WAS DEPRIVED OF THE
EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON DIRECT
APPEAL; APPELLATE COUNSEL FAILED TO RAISE AND PRESERVE
A MERITORIOUS ISSUE FOR APPELLATE REVIEW, THEREBY

PREJUDICING DEFENDANT'S APPEAL.

IV.    DEFENDANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS
AND TO EQUAL PROTECTION OF THE LAW UNDER MICHIGAN
CONST. 1963, ART 1, § 17, § 20; UNITED STATES CONST.
AMENDMENTS V, XIV; WHERE THE TRIAL COURT COMMITTED
REVERSIBLE ERROR IN DENYING HIS MOTION SO SUPPRESS HIS
STATEMENT PURSUANT TO A WALKER HEARING.

On December 2, 2002, the trial court denied petitioner's motion for relief from judgment, concluding

that petitioner failed to establish cause and prejudice under Rule 6.508(D), and that the claims were

without merit. *See People v. White*, No. 96-007827 (Wayne County, Mich., Cir. Ct. Dec. 2, 2002).

The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for

leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing

entitlement to relief under MCR 6.508(D)." *People v. White*, 471 Mich. 897, 688 N.W.2d 89 (2004);

*People v. White*, No. 251966 (Mich. Ct. App. Mar. 11, 2004).

6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on December 29, 2004.  As grounds for the writ of habeas corpus, he raises the four claims that he

raised on his motion for relief from judgment.

7.    Respondent filed his answer on September 30, 2005.  He contends that petitioner's

claims are meritless or not cognizable on habeas review, and that some of petitioner's ineffective

assistance of counsel claims are barred by petitioner's procedural default in the state courts.

8.    Petitioner filed a reply to respondent's answer on November 14, 2005.

B.    *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of first degree felony murder arising from the robbery and death

of  Fred Sova.

1.    *Suppression Hearing*

4

Prior to trial, petitioner filed a motion to suppress two statements he had given to police following his arrest. At the *Walker* hearing[1] held on petitioner's motion, the prosecution presented the testimony of Detroit Police Officer Herlotha Fields, who investigated the death of Sova. Officer Fields testified that petitioner was arrested in the early morning hours on September 13, 1996. Following his arrest, Officer Fields interviewed petitioner. He testified that he read petitioner his constitutional rights, and that petitioner signed the standard constitutional rights form. Petitioner was able to read and write, and to understand English. *See* Evid. Hr'g Tr., dated 1/17/97, at 3-6 [hereinafter "Hr'g Tr."]. After petitioner was advised of his constitutional rights, he indicated his willingness to talk to Officer Fields. *See id.* at 6. Petitioner did not indicate that he had any problems with the treatment he had received up to that point, and he did not appear to be under the influence of drugs or suffering from any medical infirmity. *See id.* at 9. After petitioner gave his statement, he reviewed and signed it. *See id.* Officer Fields testified that he interviewed petitioner again on September 15. At that time, he again advised him of his constitutional rights, and petitioner signed the standard constitutional rights form. *See id.* at 9-10. There was no change in petitioner's physical condition since his statement on September 13, and petitioner did not complain about any police conduct at that time. *See id.* at 11. After petitioner gave a second statement, he was again permitted to review the statement. *See id.* at 12. After having her memory refreshed with the arrest report, Officer Fields testified that petitioner was arrested at 3:40 a.m. on September 13. *See id.* at 13.

On cross-examination, Officer Fields testified that he first spoke with petitioner at about 3:30 p.m. on September 13, about 12 hours after he had been arrested. *See id.* at 13. He did not know

---

[1] *See People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965).

if the police had secured an arrest warrant at the time petitioner was arrested in his home. *See id.*
at 13. He later clarified, after reviewing the interview form, that the interrogation began at 6:40 p.m.
*See id.* at 15. Officer Fields conceded that petitioner was not arraigned until September 19, because
the police were still investigating the incident. *See id.* at 16. Officer Fields did not know whether
petitioner had been placed on any restrictions upon his arrest. *See id.* at 17-18. He had no
knowledge of the conditions of his detention between the initial statement on September 13 and the
second statement on September 15. *See id.* at 19-24.

    Petitioner testified on his own behalf at the evidentiary hearing. He testified that he spent
the first two or three hours following his arrest handcuffed in an interrogation room. *See id.* at 29.
Although he requested to do so, he was not allowed to make a phone call. *See id.* An Officer Butler
spoke with him for about 30 or 40 minutes. He was not fed anything during this time. *See id.* at 29-
30. Petitioner admitted that Officer Fields gave him a hamburger prior to the first interview, but
testified that he had not had anything else to eat or drink. *See id.* at 31-32. Petitioner testified that
he was scared and intimidated during the interview. He stated that Officer Fields told him that he
was going to jail for the rest of his life, and that he was intimidated by the way Officer Fields was
talking to him. *See id.* at 32-33. Petitioner testified that, during the interrogation, Officer Fields told
him that "if you don't start telling me something, I will smash your head into the wall." *Id.* at 34.
By the time of the second interview, petitioner was more scared, and felt weak, stressed out, and
humiliated. *See id.* at 35-36. Petitioner testified that those feelings were the reason he gave the
second statement. *See id.* at 36.

    After hearing the parties' arguments, the trial court denied petitioner's motion to suppress.
The court found that "in evaluating the issue of credibility . . . that Officer Fields is more credible

than Mr. White." *Id*. at 47.  The court further found that "there's really no obligation to give a

defendant a phone call immediately upon his arrest, and I don't belief that the defendant was

deprived of any food or anything that would affect [the] voluntariness of the statement." *Id*.

Accordingly, the court concluded that the statement was voluntary and denied petitioner's motion

to suppress. *See id*.

2.    *Trial Evidence*

The evidence presented at trial was accurately summarized in petitioner's brief on appeal in

the Michigan Court of Appeals:

> The first witness, Sharon Sova, wife of the deceased, identified her husband's body.
> ([Trial Transcript, dated 4/2/97,] pp. 17-26).  The next two witnesses for the
> prosecutor heard gunshot(s) and saw a man fleeing from the battery shop of the
> victims [sic], but could not identify who the fleer was.  (pp. 27-75)
>
>        The next witness called was Steven [T]urner, a Detroit Police officer, who
> first came to the scene of the homicide.  (pp. 75-85) The next witness called was
> Robert Bulgarelli, a Detroit police officer who arrested defendant at his home at 3:40
> a.m.  (pp. 86-94).  The next witness called was Herlotha Fields, a Detroit police
> officer. [H]e took two written statements from Defendant on Sept. 13 & 15th 1997.
> After explaining how Defendant was read his rights, []he first read the Sept. 13, 1997
> statement.  In it [petitioner] stated that he rode around with "Pit Bull," a/k/a Corey
> Sloan and Moe and Toby talking about robbing either a man who dealt in food
> stamps or a battery shop.  "Pit Bull" wanted to do the robbery.  (pp. 119&120) He
> then dropped "Pit Bull" off and drove away from the scene before "Pit Bull" got to
> the battery shop.  (p. 120) He also admitted that the food stamp robbery idea was his
> but he could not remember who thought about the robbing [sic] the battery shop.  (p.
> 121)  He denied knowing anything about any money and afterward he only asked
> "Pit Bull" why he shot the victim; he answered that he did not want to think about
> it.  (pp. 121-122) In the second statement that the witness took on Sept. 15, 19[9]7,
> Defendant admitted talking to Toby and "Pit Bull" right after the homicide and
> seeing that "Pit Bull" had $25.00-$30.00 on him and that "Pit Bull" handed him a
> .380 caliber gun with one bullet missing from it.  He then handed it over to Toby
> who took it back to his aunt's house.   (pp. 126-129) The next witness called was
> Lawrence Covington, a Detroit police officer who took photographs of the homicide
> scene.  (pp. 150-160) The next witness called was Dr. Cheryl Lowe, a forensic
> examiner who examined the victim and concluded that he had died of a gunshot
> wound to the chest.  (pp. 161-170) The last witness of the day was Jerome Barnes
> who also heard gunshots and saw someone run from the scene of the homicide but

could not identify him.

The following day the prosecutor called his last witness, Huberta Shelton, who testified that prior to hearing a gunshot she saw a man at a phone booth and a car in the driveway of the battery shop on the day in question.  (T.T., 04-03-97, p. 23)  A little later she heard a gunshot, and when she looked, she saw a black male running from the battery shop.  The car then left the scene.  The person running from the battery shop was the same person who got out of the car (p. 33), and eventually she identified that person as Defendant.  (p. 50)  After her testimony both parties rested their cases.  (p. 62)

Def.-Appellant's Br. on Appeal, in *People v. White*, No. 207963 (Mich. Ct. App.), at 2-4.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Fourth Amendment Claims (Claim I)*

Petitioner first contends that his warrantless arrest was made without probable cause, and that there was an excessive delay between his arrest and his arraignment. Based on these facts, petitioner argues, his statements to the police should have been suppressed as the fruits of the illegal arrest and pre-arraignment delay. The Court should conclude that this claim is not cognizable on habeas review.

It is well established that "'a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is "sufficiently an act of free will to purge the primary taint."'" *Oregon v. Elstad*, 470 U.S. 298, 306 (1985) (quoting *Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (quoting *Brown v. Illinois*, 422 U.S. 590, 602 (1975))). However, because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that "where the State has provided an opportunity for full

10

and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).

A claim that a confession was tainted by an illegal arrest and should have been excluded is a claim based on the Fourth Amendment, and thus falls with the rule of *Stone*. *See Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam); *Jones v. Johnson*, 171 F.3d 270, 277-78 (5th Cir. 1999). Likewise, a claim that the state impermissibly delayed arraignment following arrest is a claim based on the Fourth Amendment, and is therefore barred by the *Stone* rule. *See Franklin v. McBride*, No. 96-2399, 1997 WL 73228, at *1 (7th Cir. Feb. 5, 1997); *Ben-Yisrayl v. Davis*, 245 F. Supp. 2d 960, 968 (N.D. Ind. 2002). Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

Here, petitioner had the opportunity to raise his claim in the state courts. Although petitioner did not in fact raise these claims, the Michigan courts clearly provided a mechanism for petitioner to do so. Accordingly, the Court should conclude that petitioner's claim that his statements should

11

have been suppressed as the fruit of an illegal arrest and illegal pre-arraignment delay is not cognizable, and thus that he is not entitled to habeas relief on this claim.

E.    *Ineffective Assistance of Counsel Claims (Claims II & III)*

Petitioner next contends that his trial and appellate attorneys were constitutionally ineffective in a number of respects. Specifically, petitioner contends that trial counsel was ineffective for: (1) failing to seek suppression of his statements on the basis of illegal arrest and pre-arraignment delay; (2) failing to strike a juror; (3) expressing petitioner's guilt during opening statement; (4) failing to share discovery materials with petitioner; and (5) failing to properly prepare for trial. Petitioner also contends that appellate counsel was ineffective for failing to raise the Fourth Amendment claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

12

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.      *Analysis–Trial Counsel*

a.  *Failure to Seek Suppression Based on Fourth Amendment Violations*

Petitioner first contends that trial counsel was ineffective for failing to seek suppression of his statements as the fruits of both an illegal arrest and an illegal delay between arrest and arraignment.   As the Supreme Court has explained, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Petitioner cannot make this showing here.

It is unclear from the record the basis upon which petitioner first became a suspect.  Nothing in the preliminary examination or trial testimony sets forth the basis for the police focusing on

petitioner, and the search warrant itself is not a part of the record. Nevertheless, petitioner has not

set forth any reason to question whether there was probable cause for his arrest. Although his

application for leave to appeal in the Michigan Supreme Court and his habeas application make this

claim, they do so only in conclusory fashion, and do not discuss the probable cause issue at all

except to mention it. Nor has petitioner even alleged what the circumstances of the arrest were.

Because it is petitioner's burden to establish that counsel was ineffective, *see United States v.*

*Pierce*, 63 F.3d 818, 833 (6th Cir. 1995); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993),

the Court should conclude that he is not entitled to habeas relief on this claim to the extent it is based

solely on an absence of probable cause.

Petitioner's primary argument, both in the Michigan Supreme Court and here, is that the

arrest was illegal because it was effectuated without a warrant. In *New York v. Harris*, 495 U.S. 14

(1990), however, the Court held that the Fourth Amendment does not require the suppression of a

confession given after an illegal warrantless arrest which was nevertheless supported by probable

cause. *See id.* at 17-18. Here, as noted above, petitioner has offered nothing to show that the police

did not have probable cause to arrest him, and thus he would not have been entitled to suppression

based solely on the fact that the arrest inside his home required a warrant. For this reason, he cannot

show that any motion to suppress would have been granted, and he has therefore failed to show that

counsel was ineffective. *See Martin v. Mitchell*, 280 F.3d 594, 607 (6th Cir. 2002) (counsel not

ineffective for failing to file motion to suppress confession obtained after warrantless arrest).

Likewise, petitioner cannot show that counsel was ineffective for failing to file a motion to

suppress his statement on the basis that it was obtained in violation of his right to a speedy

arraignment. Petitioner's claim is based on the Supreme Court's decision in *County of Riverside v.*

14

*McLaughlin*, 500 U.S. 44 (1991). In that civil rights case under 42 U.S.C. § 1983, the Court held that the Constitution requires a defendant be given a reasonably prompt probable cause determination (such as arraignment) following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. *See id*. at 55-58. While there was unquestionably a *McLaughlin* violation here, however, petitioner cannot show a reasonable probability that a motion to suppress his statements on this basis would have been successful. The Supreme Court has explicitly declined to rule on the appropriate remedy for a *McLaughlin* violation, *see Powell v. Nevada*, 511 U.S. 79, 84 (1994), and the Michigan courts have held that suppression of a statement is not *per se* required for a *McLaughlin* violation. *See People v. Manning*, 243 Mich. App. 615, 636-44, 624 N.W.2d 746, 756-60 (2000).[2] Thus, the existence of a *McLaughlin* violation alone does not require suppression of a custodial statement given after arrest but before arraignment, and there is not a reasonable probability that a motion to suppress the statements on that basis would have been successful. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failing to Strike Juror

Petitioner next contends that counsel was ineffective for failing to strike Joel Iverson from the jury venire. During *voir dire*, Mr Iverson indicated that he worked for a private investigation form, usually performing undercover work in criminal investigations. He also had previously worked with the Detroit Police Reserves. *See* Jury Trial Tr., dated 4/1/97, at 53. Further, he

---

[2]Under *Manning*, the existence of a delay between arrest and arraignment is a factor to be considered in determining whether a statement was voluntary. This issue, discussed below in connection with petitioner's involuntary confession claim, was litigated by counsel as part of that claim. In this section, petitioner is arguing that the *McLaughlin* violation alone required suppression, an issue separate from the voluntary confession claim.

15

indicated that his work put him in contact with police officers on a regular basis. *See id*. at 55. Notwithstanding this, Mr. Iverson indicated that his occupation "won't affect my ability of being fair." *Id*. at 56. Mr. Iverson also indicated that, when he was about seven or eight years old, his thirteen-year-old brother had been shot in the head; however, because it was so long ago Mr. Iverson did not remember the details of the incident. *See id*. Again Mr. Iverson indicated that this prior crime against his brother would not affect his ability to be fair in petitioner's case. *See id*. at 57. Petitioner contends that counsel was ineffective for failing to strike Mr. Iverson, either for-cause or peremptorily. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

"[J]ury selection is a process that inherently falls within the expertise and experience of trial counsel." *Palacio v. State*, 511 S.E.2d 62, 67 (S.C. 1999) (citing cases). Because of this, counsel's decisions in the jury selection process are the type of strategic decisions which are particularly difficult to attack. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D. Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science. There is nothing unreasonable or professionally deficient in a defense counsel's informed decision to rely upon his own reading of venire members' verbal answers, body language, and overall demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998). Here, petitioner has offered nothing to suggest that counsel's decision to keep Juror Iverson on the panel was anything other than trial strategy based on his assessment of Juror Iverson's ability to render a fair verdict. Accordingly, this Court should not second-guess counsel's judgment.

Further, petitioner cannot show that he was prejudiced by counsel's failure to remove Juror Iverson from the panel. In order to establish prejudice attributable to a counsel's failure to remove a juror, petitioner must show that the juror was actually biased. *See Irons v. Lockhart*, 741 F.2d 207,

16

208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle v. Calderon*, 919 F. Supp. 1367, 1389 (N.D. Cal. 1996). Here, petitioner has offered nothing to demonstrate that Juror Iverson was actually biased against him. In the first place, Juror Iverson repeatedly affirmed that he could set aside his personal views and decide the case based on the evidence, and petitioner has pointed to nothing to call into question the sincerity of Juror Iverson's assurance. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim). Second, Juror Iverson's work on criminal investigations and connections with law enforcement officials does not alone demonstrate bias, *See Baze v. Parker*, 371 F.3d 310, 326 (6th Cir. 2004); *United States v. Flores*, 63 F.3d 1342, 1357-58 (5th Cir. 1995), nor does his brother's murder, *see United States v. Gonzalez-Soberal*, 109 F.3d 64, 70 (1st Cir. 1997); *United States v. Gibbs*, 125 F. Supp. 2d 700, 708-09 (E.D. Pa. 2000), *aff'd*, 77 Fed. Appx. 107 (3d Cir. 2003). In the absence of any demonstration that Juror Iverson was actually biased against him, petitioner cannot show either that counsel was deficient for failing to strike Juror Iverson or that he was prejudiced by counsel's failure. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Conceding Guilt

Petitioner next contends that counsel conceded his guilt during the opening statement. This claim fails as a factual matter. Nowhere in his opening statement does counsel concede that

petitioner is guilty of any offense. *See* Trial Tr., dated 4/2/97, at 16-17.  On the contrary, counsel conceded that petitioner knew of the crime by way of arguing that petitioner was not guilty of any criminal offense. *See id*. at 16 ("[W]e anticipate the evidence is going to show that Mr. White had knowledge of the crime but he didn't participate.  And the Judge is going to instruct you that knowledge of a crime does not being mean [sic] the person is guilty of the crime.").  And, counsel's argument was not only reasonable, but was necessary in light of the undisputed and overwhelming evidence that petitioner, at a minimum, had knowledge of the crime.  Thus, petitioner cannot show that counsel's opening statement was deficient, or that he was prejudiced by counsel's statement.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Share Discovery Materials

Petitioner next contends that counsel was ineffective for failing to share discovery materials with him.  However, petitioner has failed to meet his burden of demonstrating counsel's ineffectiveness, because he has failed to allege what discovery should have been shared, or how such sharing of discovery would have impacted the jury's determination. *See Lenoir v. United States*, No. 2:04-CV-392, 2005 WL 2990630. at *5 (N.D. Ind. Nov. 8, 2005).  As a general matter, "there is no constitutional duty to share discovery documents with petitioner.  Petitioner cites no case law for this proposition, and this court finds none." *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998).  While petitioner did have a right to participate in the making of decisions fundamental to his defense, he has failed to show that "the actual access to the hard copies of the discovery documents was . . . fundamental to [his] defense." *Ramsden v. Warden, Dep't of Corrections*, No. 02-138-B-S, 2003 WL 356031, at *10 (D. Me. Feb. 14, 2003).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

18

*e.  Failing to Prepare for Trial*

Finally, petitioner contends that counsel was ineffective because he was unprepared for trial. Petitioner contends that this unpreparedness is demonstrated by counsel's inadequate cross-examination, inadequate opening statement, and failure to offer any evidence on petitioner's behalf. However, petitioner does not point to any specific deficiencies in counsel's cross-examination of the witnesses, nor does he detail any witnesses who could have been called and who would have provided exculpatory evidence. Petitioner's conclusory allegations that counsel was unprepared are insufficient to warrant habeas relief on this ineffective assistance of counsel claim. *See Gordy v. Hargett*, 37 Fed. Appx. 437, 439 (10th Cir. 2002); *Leano v. United States*, 334 F. Supp. 2d 885, 895 (D.S.C. 2004); *United States v. Chandler*, 950 F. Supp. 1545, 1558 (N.D. Ala. 1996).  Further, petitioner cannot show that counsel's decision not to present any defense witnesses was unreasonable.  Here, the evidence against petitioner was far from overwhelming.  While petitioner admitted to knowing about and discussing the incident, in his statements to the police he denied having any active role.  The only contrary evidence was the testimony of one eyewitness, who failed to identify petitioner in a line-up and who observed the perpetrator fleeing from the battery shop from some distance.  In these circumstances, counsel's decision to mount a reasonable doubt defense attacking the eyewitness identification was reasonable.  *See Jun v. Gile*, No. 98-55883, 2000 WL 32067, at *1 (9th Cir. Jan. 14, 2000); *see also*, *Jones v. Hollins*, 884 F. Supp. 758, 765-66 (W.D.N.Y. 1995) (internal citations and quotations omitted) ("Generally, the decision whether to pursue a particular defense is a tactical choice which does not rise to [the] level of a constitutional violation.  The same is true with respect to counsel's decision whether to call any witnesses on behalf of the defendant, and if so, which witnesses to call. . . . [T]he habeas court will not second-

19

guess trial strategy simply because the chosen strategy has failed, especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

        3.    *Analysis–Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his Fourth Amendment claims on direct appeal. In order to succeed on this claim, however, petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in the preceding sections of this Report, petitioner has failed to show that his claims are meritorious. He therefore cannot show that counsel was ineffective for failing to raise these claims on direct appeal.

F.    *Involuntary Confession Claim (Claim IV)*

Finally, petitioner contends that his statements to the police were involuntary, and that the Michigan courts erred in rejecting his claim. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.    *Clearly Established Law*

As the Supreme Court explained in *Jackson v. Denno*, *supra*, "a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Jackson*, 378 U.S. at 376. "Determining whether a confession is 'voluntary' for due process purposes entails an examination into the 'totality of the circumstances' to determine whether the confession was

procured by acceptable techniques that draw upon an essentially free and unconstrained choice or by unacceptable tactics that extract their results from an overborne will.  The critical line of distinction is between 'self-direction' and 'compulsion.'" *Cooper v. Scroggy*, 845 F.2d 1385, 1390 (6th Cir. 1988) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)); *accord Dickerson v. United States*, 530 U.S. 428, 434 (2000).  It is not enough that a defendant's will was "overborne" by some factor for which state officials are not responsible.  "Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession." *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).  There is no bright line test for determining whether a confession is voluntary, nor is any one factor dispositive.  Rather, a court must "look[] to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case.  Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishments, such as the deprivation of food or sleep." *United States v. Mahan*, 190 F.3d 416, 422-23 (6th Cir. 1999) (internal quotation and citation omitted); *accord*, *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

For purposes of habeas review, "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a [legal] matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  However, a state court's findings of historical fact are presumed by this Court to be correct unless rebutted by petitioner with clear and convincing

21

evidence.  Thus, "subsidiary factual questions, such as whether . . . in fact the police engaged in the intimidation tactics alleged by the defendant are entitled to the § 2254[(e)(1)] presumption." *Miller*, 474 U.S. at 112; *see also*, *id*. at 117.

      2.    *Analysis*

Here, petitioner cannot show that his statements to the police were involuntary.  Although petitioner testified that he was threatened by one police officer, denied food, and made to sit in handcuffs for an extended period, the trial court found that petitioner's testimony was not credible, and that there was no coercion, deprivation of food, or the like.  As explained above, these factual findings are binding here.  *See Pritchett*, 117 F.3d at 963.  Further, under these facts there has been no showing that petitioner's statements were involuntary.  *See, e.g., United States v. Van Metre*, 150 F.3d 339, 348 (4th Cir. 1998).

Petitioner also suggests that his confession was involuntary because of the delay between the arrest and his arraignment.  As explained above, the delay alone, and the violation of *McLaughlin*'s 48-hour rule, is insufficient to render the statements subject to suppression.  Rather, "[a]n undue delay between arrest and arraignment only give rise to a constitutional claim when the delay results in a confession that was coerced."  *Sklar v. Ryan*, 752 F. Supp. 1252, 1264 (E.D. Pa. 1990) (citing *Turner v. Pennsylvania*, 338 U.S. 62 (1949)).  Here, as explained above, there was no evidence credited by the trial court which showed that petitioner's statements were coerced, or the result of any coercive pressures.  Further, the delay alone does not suggest otherwise.  Although six days elapsed between the arrest and the arraignment, a much shorter time elapsed between the arrest and the giving of the statements.  Petitioner's first statement was given about 14 hours after his arrest–well within the *McLaughlin* time-frame–and his second statement, which was largely

22

corroborative of the first statement, was given two days later, only a few hours outside of the *McLaughlin* window.  In these circumstances, the Court should conclude that the delay between arrest and arraignment alone is insufficient to demonstrate that petitioner's statements were involuntary.  Accordingly, the Court should deny petitioner's application on this ground.

G.    *Evidentiary Hearing*

With his reply to respondent's answer, petitioner also filed a motion for an evidentiary hearing.  Petitioner contends that an evidentiary hearing is necessary to properly adjudicate his ineffective assistance of counsel claims.  The Court should conclude that petitioner is not entitled to an evidentiary hearing.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2).  Here, an evidentiary hearing is not permissible under § 2254(e)(2).  That section provides that, "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met.  28 U.S.C. § 2254(e)(2).  In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[3] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]"  *Id.* at 430.  Thus, "[u]nder the opening clause of §

---

[3]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d).  Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention.  *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Although petitioner sought an evidentiary hearing in the Michigan Court of Appeals, he did not do so in conformity with the court rules. Specifically, the court of appeals denied the motion to remand for an evidentiary hearing "because defendant has failed to demonstrate by affidavit or offer of proof the fact to be established at a hearing. MCR 7.211(C)(1)(a)(ii)." *People v. White*, No. 207963 (Mich. Ct. App. June 2, 1998). Petitioner's failure to comply with the relevant state procedural requirements renders his effort to develop the facts not diligent, and thus he is not entitled to an evidentiary hearing here. *See Robinson v. Polk*, ___ F.3d ___, ___, 2006 WL 328388, at *13 (4th Cir. Feb. 14, 2006); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002). Accordingly, the Court should deny petitioner's motion for an evidentiary hearing.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th

24

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/21/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 21, 2006.

s/Eddrey Butts
Case Manager

25